IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 24, 2007 Session

**CHRISTOPHER JAMES DODSON v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Williamson County**
**No. CR011596     Robert E. Lee Davies, Judge**

_____

**No. M2007-00643-CCA-R3-PC** - Filed March 31, 2008

_____

The Petitioner, Christopher James Dodson, pled guilty to facilitation of robbery, a class D felony. The trial court sentenced the Petitioner, a Range I offender, to four years to be served at thirty percent. The Petitioner filed a petition for post-conviction relief in which he alleged that the parties and the trial court agreed at sentencing that the Petitioner should receive thirteen months of jail credit, which he was not given by the Tennessee Department of Correction. Because he was not given this jail credit, the Petitioner alleged he was entitled to post-conviction relief because his guilty plea was not voluntarily entered, and he had received the ineffective assistance of counsel. The post-conviction court dismissed the petition after a hearing. The Petitioner appeals that dismissal, and we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which J.C. MCLIN, J., joined. JOSEPH M. TIPTON, P.J, filed a dissenting opinion.

Samuel B. Dreiling, Franklin, Tennessee, for the Appellant, Christopher James Dodson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Cameron L. Hyder, Assistant Attorney General; Ronald L. Davis, District Attorney General; Derek K. Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

The Petitioner was originally indicted for robbery and theft of property valued under $500. At the Petitioner's guilty plea hearing, the State asserted, and the Petitioner agreed, that the facts supporting the guilty plea were as follows:

We would offer proof, Your Honor, in case number II-CR07240, that the victim in this cause was at a video store located here in Williamson County, that the victim was robbed, not at gun point but rather she was sort of accosted, thrown down to the ground by an individual by the name of Samuel Bennett, [we] would offer proof that the defendant offered Samuel Bennett the . . . hooded sweatshirt that Mr. Bennett . . . used in the commission of the offense, and this would conclude in large manner our proof at trial.

The State then informed the trial court of the agreement that it had reached with the Defendant, stating:

In case number II-CR07420, to the defendant's plea of guilty to the offense of . . . facilitation of robbery, a Class D Felony, the agreement is four years as a Range I Standard Offender. This sentence is to be run concurrently with II-CR08526, and II-CR08527, but it is to run consecutively to his current sentence. And that concludes our agreement.

The trial court ensured that the Defendant wished to plead guilty, found the Defendant guilty, and then stated the following when sentencing the Defendant:

I sentence you to four years to run concurrently with the other two cases [in which you are currently pleading guilty], but consecutive[ly] to your current sentence that you're serving now, and likewise, you still get your pre-trial jail credit from March 30, 2004.[1]

At the hearing on the Petitioner's petition for post-conviction relief, the Petitioner's attorney noted that the Petitioner had made parole on his sentence and that he was no longer incarcerated. The Petitioner's attorney stated that he informed the Petitioner that it was not within the court's power to grant the pretrial jail credit that the Petitioner thought he would receive under the original agreement.

The Petitioner's counsel ("Counsel") during the guilty plea proceedings testified that she represented the Petitioner on this charge, and she was aware that he filed two petitions to have her removed as his counsel, which were both denied. She said that the Petitioner never expressed to her concerns about a speedy trial, and, in fact, he did not want a trial at all. Counsel also testified that she never told the Petitioner that she would "get him convicted" as he claimed. Counsel said that she negotiated a plea deal for the Petitioner. The State sought to have the Petitioner sentenced to a "significant" amount of time based upon the Petitioner's prior record. The Petitioner appeared in court to enter a plea, and then he refused to enter the plea.

Counsel recalled the specifics of the plea deal and that she got the State to agree to sentencing the Petitioner as a Range I offender to four years. The Petitioner was in custody at

---

[1]The trial court sentenced the Defendant on April 25, 2005.

this time, and the deal included that his sentence would run concurrently to two other convictions and consecutively to the sentence that he was currently serving. He was to receive jail credit for every day that he was in jail, and TDOC was to be responsible for how jail credit was assigned.

Counsel identified Tennessee Rule of Criminal Procedure 32(c)(3)(a), which provides that consecutive sentencing is mandatory when a trial court sentences a defendant for a felony committed while the Petitioner was on parole for another felony. She then stated that she was aware that the Petitioner was pleading guilty to a felony, facilitation of robbery, he committed while on bond for another felony. She did not think Rule 32 would make the Petitioner ineligible for pretrial jail credit for the thirteen months he served before the guilty plea hearing. Counsel agreed that the guilty plea transcript reflected that the parties thought the Petitioner would get his pretrial jail credit, and she said the credits were "very important" to the Petitioner.

On cross-examination, Counsel testified that she went over this case with the Petitioner multiple times and that she spoke with him numerous times on the telephone. She said that, on several occasions, she spoke with him for so long that the jail cut off his telephone service. Counsel recalled a time when the Petitioner threatened to kill her, but she did not request to be recused from representing him because she thought he was upset when he threatened her. Counsel said she still zealously represented the Petitioner, and she told him that he should go to trial if the State did not reduce the charge to facilitation of robbery. The State subsequently agreed to the Petitioner's pleading guilty to facilitation of robbery and being sentenced as a standard offender. Counsel said that, at the time, all the parties were aware that the Petitioner committed this offense while he was on parole, as evidenced by the State's demand that the Petitioner's sentence run consecutively to the two-year sentence he was serving.

Counsel said that the Petitioner came to court to plead guilty, but he changed his mind, and the trial court set a date for trial. The Petitioner later sent a letter to the judge apologizing for his behavior in court and asking if he could please enter his plea. The trial court agreed, and the Petitioner entered his plea. Counsel agreed that the negotiated plea included that the Petitioner was to receive some pretrial jail credit, but his sentence was to run consecutively to his current sentence. Counsel said that she explained to the Petitioner how his sentences would run and that he understood this explanation.

The parties stipulated to the fact that the Petitioner was incarcerated between March 29, 2004, and April 24, 2005, and that the time he served was not credited towards his sentence in this case. The time was, rather, served against the two-year sentence that he had for a prior conviction.

The Petitioner testified about his pretrial jail credits, saying it was his understanding that he would receive 391 days pretrial jail credit plus 104 pretrial behavioral credits, for a total of sixteen months of credit. He said that he did not enter a plea before April 25, 2005, because "nobody . . . want[ed] to put [the jail credits] in writing as part of the plea bargaining." He said that he would not have pled guilty had he known that he would not receive this pretrial jail credit. On cross-examination, the Petitioner agreed that he did not mention pretrial jail credits in

his letter asking the judge to accept his plea. He also said that he received credit for the time that he served towards a two-year sentence he received for another conviction.

Based upon this evidence, the post-conviction court found:

I want to first address [the Petitioner's] initial ground . . . that his plea was not knowingly and voluntarily entered.

In reviewing the law that's applicable to this type of a claim, that is the knowing and voluntary nature of the guilty plea, the standard was and remains in the State of Tennessee and the United States for that matter, but the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.

In making that determination this Court must look to the totality of the circumstances. A Court, such as this Court, charged with determining whether a plea was voluntary and intelligently entered, must look to the very circumstantial facts . . . .

. . . .

The Court finds based upon the evidence before the Court, the evidence does not support a finding that his plea was involuntarily entered or the result of a coerced plea. It was anything but involuntary. In support of that, I point to the exhibits that have been introduced today, including Exhibit 2 which clearly states that the defendant certifies to the Court at that time that he fully understands the nature of his actions here today, and that his actions are voluntary and not the result of force, threat or promise of any nature.

Additionally, his claim of involuntary plea is not supported by Exhibit 3 which is the transcript of the April 25, 2005 entry of the plea. Neither of these support a finding even in this Court's view by a preponderance of the evidence let alone clear and convincing that this plea was somehow the result of conduct that the defendant or petitioner didn't want to participate in. This was a voluntary plea. And therefore, on the ground of involuntariness of the guilty plea, the Court finds that the petitioner has failed to meet his burden.

Further, the post-conviction court found that Counsel was not ineffective. The court noted that Counsel met with the Petitioner on several occasions, took several phone calls from him, adequately reviewed the discovery, discussed the Petitioner's situation on numerous occasions with him, fully explained his options, and gave "solid" counsel on a conviction for facilitation as opposed to the underlying charge of robbery. The court also found that Counsel effectively assisted the Petitioner in negotiating a plea that was very favorable to him. After finding that counsel was not ineffective, the court also found that the Petitioner had not been prejudiced.

-4-

The post-conviction court then explained:

> And finally, I think, the Court needs to make this finding that a post conviction petition is designed to redress constitutional violations, not technical complaints about how the Department of Correction computes the commencement dates or any other type of jail credits of a sentence.
>
> In general terms this whole issue of ineffective assistance of counsel and involuntary plea revolves around Mr. Dodson's claim that he did not receive proper pretrial jail credits or the application of credits. This alleged problem is not one that rises to a proper ground for post conviction release. I think, our law in Tennessee is clear on that. . . .
>
> . . . .
>
> For all of those reasons, I find that the [P]etitioner has failed to prove by clear and convincing evidence that he is entitled to post conviction relief on this matter, and the petition is denied.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it dismissed his petition because: (1) Counsel was ineffective by not informing him of the direct consequences of his conviction, namely that he could not receive credit for the days he spent in jail pursuant to Tennessee Rule of Criminal Procedure 32; and (2) his guilty plea was not knowingly and voluntarily entered because Counsel did not discuss the actual consequences of his pleading guilty in that he and Counsel were both under the impression that he would receive the jail credit towards his four-year sentence and not towards his two-year sentence.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a petitioner in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). When a petitioner makes a claim of ineffective counsel within the context of a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's deficiency, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Manning v. State*, 833 S.W.2d 635, 637 (Tenn. Crim. App. 1994).

The Due Process Clause of the United States Constitution requires that guilty pleas be knowing and voluntary. *Id.* When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blakenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citations omitted). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.* The United States Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea to be voluntary." *Hill*, 474 U.S. at 56.

We understand the Petitioner's complaint to be that, because he was sentenced as a Range I offender to serve his time at thirty percent, if his 391 day jail credit had been applied to his four-year sentence he would have only 48 days until possible release on that four-year sentence.[2] The TDOC instead applied these days to a two-year sentence the Petitioner received for a prior conviction that was to be served prior to the service of the four year sentence at issue. A copy of the judgment for the prior two-year sentence is not in the record. For argument sake, however, if the Petitioner were sentenced to two years at thirty percent he would likely only

---

[2]A four year sentence amounts to approximately 1461 days in jail. If this is served at thirty percent, this amounts to actually serving 439 days.

serve 219 days,[3] if he were paroled after serving thirty percent. Therefore, his argument seems to be that, if the 391 days had been applied to his four-year sentence, he would have served 48 days plus 219 days (on the two year sentence) for a total of 267 days. However, because it was applied to his two-year sentence, he was required to serve 439 days, or an additional 172 days. The Petitioner asserts that, had Counsel properly informed him about the rule requiring that his jail credits be applied to his two-year sentence, he would not have entered his guilty plea.

The Petitioner contends that his plea was not knowing and voluntary because his trial counsel was ineffective when explaining jail credits to him. As stated above, the Petitioner would have to show he was prejudiced to be entitled to relief, and he has not done so. The judgment of conviction from his two-year sentence is not included in the record. If that judgment ordered the Petitioner, whose record is extensive, to serve his sentence as a career offender, at sixty percent, or a violent offender, at one hundred percent, then the TDOC's application of his pretrial jail credit to that sentence, rather that the four-year sentence, would be of no consequence. Further, there is no guarantee that an inmate obtain parole after serving the allocated percentage. "The release eligibility date provided for in this section is the earliest date an inmate convicted of a felony is eligible for parole . . . ." T.C.A. § 40-35-501(k) (2003). After an inmate becomes parole eligible, release is not guaranteed. "Release on parole is a privilege, not a right . . . ." T.C.A. § 40-35-503(b) (2003). The Criminal Sentencing Reform Act includes the following criteria for denying release to a parole eligible inmate: (1) if there is substantial risk that the defendant will not conform to the conditions of the release programs; (2) if the release at that time would depreciate the seriousness of the crime or promote disrespect of the law; (3) if the release would have a substantially adverse effect on institutional discipline; or (4) if the inmate's continued correction treatment, medical care, or vocation or other training in the institution will substantially enhance the inmate's capacity to lead a law-abiding life at a later release time. *Id.*

The Petitioner was made aware multiple times that his four-year sentence would be served consecutively to his two-year sentence. The fact that he *may* have been eligible for parole after serving thirty percent of either sentence, and the application of his jail credits to one sentence rather than the other would have made his sentence potentially shorter, does not render his guilty plea unknowing or involuntary.

### III. Conclusion

Based on the foregoing reasoning and authority, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[3]Thirty percent of 730 days is 219 days.